UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**EDWARD P. GASKELL, III, ET AL**    CIVIL ACTION

**VERSUS**    NO. 09-6367

**UNITED STATES OF AMERICA**    SECTION "K"(2)

## ORDER AND OPINION

Before the Court is the "Motion to Dismiss for Lack of Jurisdiction " filed on behalf of defendant the United States of America. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion to the extent that it seeks to dismiss the "takings" claim alleged by plaintiffs Edward P. Gaskell and West End Tennis and Fitness Club, Inc. ("West End") and DENIES the motion to the extent that it seeks to dismiss plaintiffs' claim under the Federal Tort Claims Act, 28 U.S.C. §1346(b), §2671, *et seq.*("FTCA").

BACKGROUND

In 1990, Edward P. Gaskell, III became the assignee of a lease from the Board of Commissioners of the Orleans Levee District ("OLD") for property located in Orleans Parish, Louisiana, adjacent to the 17th Street Canal. Mr. Gaskell was a shareholder in West End Tennis and Fitness Center, Inc., which owned a clubhouse, pool, tennis courts, and other improvements on the leasehold. Mr. Gaskell also served as the manager of the tennis club that operated using the facilities located on the leased property. In the aftermath of Hurricane Katrina, the leased property sustained significant damage.

Following Hurricane Katrina and the breaching of the 17th Street Canal, OLD and the City of New Orleans (referred to collectively herein after as "Local Sponsors") entered into a

Cooperation Agreement with the United States Army Corps of Engineers ("Corps") on October 20, 2005 for levee repair work and rehabilitation. On January 27, 2006, the Corps and the Local Sponsors entered into a Supplemental Agreement pursuant to which the Local Sponsors agreed to provide the Corps with the right of entry onto designated land owned by the Local Sponsors, including the property leased to Mr. Gaskell. On February 13, 2006, the Mayor of New Orleans issued a "Commandeering Order" granting the Corps an irrevocable right of entry to property owned by OLD and the right to use the property leased to Mr. Gaskell, including the right to perform certain work including "driving sheet pile, placement of interim closure structure and integrated pumps, to deposit crushed stone, file, spoil and waste material thereon, to move, store and remove equipment and supplies and erect and remove temporary structures. " Doc. 1, p.8. Thereafter, in March 2006, OLD granted the Corps a right of entry for the property leased to Mr. Gaskell. In December 2006, Mr. Gaskell and West End filed suit against OLD and the City of New Orleans under the Louisiana Constitution in Civil District Court for the Parish of Orleans for damages to the leased property and the taking of the plaintiffs' leasehold in the commandeered property.

Additionally, on January 18, 2007, Mr. Gaskell and West End filed a Request for Administrative Relief with the Corps seeking just compensation for the taking of the leased property. In that same document plaintiffs served a claim under the FTCA for the damages to their leasehold and the property. On December 23, 2008, a representative of the Corps denied the takings claim stating that OLD had provided the Corps with a Right of Entry to the property and stating that any claim should be addressed to OLD. Thereafter, the Corps denied the FTCA claim.

On September 17, 2009, Mr. Gaskell and West End filed this suit naming the United States as a defendant seeking to recover under the FTCA for damage to their property interest.

2

Alternatively plaintiffs allege that the Corps took their property interest without just compensation. The United States filed a "Motion to Dismiss For Lack of Jurisdiction" pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure contending that plaintiffs' claim is not a tort claim arising under the FTCA, but rather is a claim for the "taking" of plaintiffs' property interest, and therefore this Court lacks subject matter jurisdiction.

## LEGAL STANDARD

"The party asserting subject matter jurisdiction in response to a Rule 12(b)(1) motion to dismiss bears the burden of proof." 356 Fed. Appx. 673, 674, 2009 WL 3833767 (C.A.5 (Tex.)) citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where as here, the defendant mounts a "facial" attack on the plaintiff's complaint under Rule 12(b)(1), the district court is "required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

## ANALYSIS

The FTCA authorizes:

> . . . civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claim and in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §1346(b)(1); see also 28 U.S.C. §2671, *et seq.* It is undisputed that this Court has subject matter jurisdiction over claims arising under the FTCA.

On the other hand the Court of Federal Claims has exclusive jurisdiction over claims "against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort[]"

3

arising under The Tucker Act, where more than $10,000.00 is sought in damages. 28 U.S.C §1491(a)(1); see also 28 U.S.C. §1346(a)(2).[1] As noted herein above, plaintiffs allege damages far in excess of $10,000.00. Therefore, if plaintiffs' claims are properly construed as a FTCA claims, this Court has subject matter jurisdiction over those claims. However, if the plaintiffs' claims arise under the Tucker Act, then this Court lacks subject matter jurisdiction over those claims. Thus, the critical inquiry is whether plaintiffs' claims are properly characterized as claims under the FTCA, the Tucker Act, or both.

In *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003), the Federal Circuit set forth the two-part test to be applied to distinguish "potential physical takings from possible torts"; the test provides:

> First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the "direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the actions." *Columbia Basin Orchard v. United States*, 132 Ct. Cl. 445, 132 F.Supp. 707,709 (1955) (holding that a claim for the loss of fruit trees resulting from the contamination of a spring resulting from the combination of the government's discharge of water into a nearby lake and unprecedented rainfall was compensable, if at all, as a tort, not a taking); *Owen v. United States*, 851 F.2d 1404, 1418 (Fed. Cir. 1988) (en banc) (remanding for a determination of whether the claimant's property loss flowed from an intention to do an act the natural consequence of which was to take [the] property or was such an indirect consequence of [the governments action] as not to be a compensable taking). Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt

---

[1] Federal district courts have jurisdiction over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount . . . for liquidated or unliquidated damages in cases not sounding in tort . . . ." 28 U.S.C. §1346(a)(2).

the owners right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value. *See, e.g. Southern Pac. Co. v. United States*, 58 Ct. Cl. 428 (1923) (holding that damage to the claimants railroad resulting from construction of a breakwater at the mouth of a bay was consequential and not compensable as a taking, citing *John Horstmann Co. v. United States*, 257 U.S. 138, 145, 42 S.Ct. 58, 66 L.Ed. 171 (1921)), *aff'd* 266 U.S. 586, 45 S.Ct. 124, 69 L.Ed.454 (1924); *Drury v. United States*, 52 Fed. Cl. 402, 403-04 (2002) (agreeing that a plaintiffs claim against the government based on alleged wrongful acts including trespass and destruction of improvements on the plaintiffs land did not constitute a taking because the acts did not rise [] to the magnitude of an appropriation of some interest in his property for the use of the government. (quoting *BMR Gold Corp. v. United States*, 41 Fed. Cl. 277, 282 (1998))).

Applying the *Ridge Line* test, plaintiffs' claim based on the government's occupation of the leased property is properly categorized as a takings claim. Considering the allegations in plaintiffs' complaint with respect to the Commandeering Order providing the Corps with the right to use the leased property for work at the 17th Street Canal and adjacent to the leased property and the allegation that the Corps actually occupied the property, there can be no doubt that the government intended to occupy the leased property. Thus the first prong of the *Ridge Line* test is satisfied.

As noted previously, the second prong of the *Ridge Line* test directs the Court to assess the "nature and magnitude of the government action." *Id.* at 1356. To put it another way, the Court must "consider whether the government's interference with any property rights . . . was substantial and frequent enough to rise to the level of a taking." *Id* at 1357. Plaintiffs' complaint alleges that:

- "The US Army Corps of Engineers workers and contractors did in fact enter and occupy, and continue to occupy, the land

5

- operated by the petitioners"[2];
- the Corps "erected structures either on, or immediately adjacent to the property so as to interfere with any potential use of the property by petitioners[]"[3];
- "The actions of the [Corps] have prevented and rendered moot and/or impossible, any interest, possibility, need or efficacy of the petitioners to proceed with any reconstruction, repair or rehabilitation of petitioner's improvements on the property[]"[4];
- "The use and occupation of the property by the [Corps], their workers and contractors, has prevented the petitioners from operating their business, causing continuing damages to their business, including total loss of income[]"[5];
- "there is no timetable to determine if, or when, the [Corps] will cease their occupation and use and trespass on the petitioners [sic] property[6]; and
- "The [Corps's] damage to the claimants' property and property rights caused by the trespass continues at this time, and it is anticipated that the continuing damage to my clients property and property rights will continue indefinitely . . .."

Plaintiffs' allegations, which the Court must accept as true for purposes of this motion, indicate that the Corps's occupation of the leased property is more than a isolated invasion of the property; the complaint alleges a substantial occupation of the property. At the time plaintiffs filed their complaint, the Corps had extensively occupied the leased property for approximately three and a half years and continued to occupy the property. The period of occupation in this case significantly surpasses the period of occupation found in *Drury v. U.S. Department of the Army*, 902 F.Supp. 107 (E.D. La. 1995) which plaintiffs cite in support of their contention that their claim for

---

[2] Doc. 1, ¶27.

[3] *Id.*

[4] Doc. 1, ¶28.

[5] Doc. 1, ¶29.

[6] Doc. 1, ¶30.

occupation is a tort claim not a takings claim. In *Drury,* the government occupied the property for slightly more than two years and no longer occupied the property at the time suit was filed. Based on those factual differences , and the fact that *Drury* predates the Supreme Court's formulation of the *Ridge Line* test, the Court concludes that *Drury* is not dispositive. If the allegations of the government's intentional occupation of the property coupled with the substantial nature of the government's occupation of the property state a claim, they state a takings claim over which this Court lacks jurisdiction.

However, plaintiffs' claims against the Corps are not limited to those arising from the occupation of the leased property. The plaintiffs also allege that the Corps has damaged the improvements to the property. Specifically, the complaint alleges that:

"[t]he US Army Corps of Engineers workers and contractors . . . removed fences, destroyed the majority of tennis courts . . . destroyed the fences and deck adjacent to the pool area . . .." Doc. 1, ¶27. Plaintiffs also allege that "[t]he US Army Corps of Engineers, their workers and contractors have destroyed . . . the majority of the tennis courts, decking, fencing, and other structures and improvements." Doc. 1, ¶ 28. The allegations of damages to the improvements that plaintiffs have developed on the leased property are separate and distinct from the taking allegations. The alleged damages to the improvements on the leased property are not sufficiently substantial in nature to constitute a taking under *Ridge Line.* Plaintiffs' claim, if any, arising from the allegations of damages to the physical improvements to the property states a claim sounding in tort, over which this Court has jurisdiction.

Plaintiffs request that if the Court concludes that they have alleged a takings claim that the Court transfer that claim to the Court of Federal Claims pursuant to 28 U.S.C. §1631, rather than

dismiss the claim. The Court denies that request.

Title 28 U.S.C. §1631 provides in pertinent part that:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed.

That statute further provides that once such a transfer has occurred, " the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. §1631. Because 28 U.S.C. §1621 permits the transfer of an action to only "such court in which the action . . . could have been brought at the time it was filed," if the Court of Federal Claims lacked jurisdiction over plaintiffs' takings claim when plaintiff filed that claim in this Court, then the takings claim cannot be transferred to the Court of Claims.

Title 28 U.S.C. §1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for and in respect to which the plaintiff . . . has pending in any other court any suit . . . against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

"Under 28 U.S.C. §1500, a plaintiff cannot file a claim in the Court of Federal Claims if she has pending the same claim against the Government in district court, even if the district court claim has since been adjudicated." *Griffin v. United States*, 590 F.3d 1291, 1293 (Fed. Cir. 2009) (internal quotation omitted). The "has pending" language of §1500 includes claims filed "simultaneously" under §1631. *Id.*, *United States v. County of Cook, Illinois*, 170 F.3d 1084, 1091 (Fed. Cir. 1999) ("the 'filing' of the same claim simultaneously in the district court and the Court of Federal Claims

by operation of §1631 deprives the latter court of jurisdiction pursuant to §1500"), *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). Therefore, if plaintiffs' takings claim is transferred to the Court of Federal Claims, it would be considered to have been filed on the same date that plaintiff filed this suit, and because the transferred takings claim would be the same claim filed by plaintiffs in this suit, §1500 bars jurisdiction over that takings claim in the Court of Federal Claims. Accordingly, the takings claim cannot be transferred; it must be dismissed without prejudice.

New Orleans, Louisiana, this 21st day of September, 2010.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE